**STATE of Maine**

**v.**

**Peter R. HANSON.**

Supreme Judicial Court of Maine.

Jan. 23, 1975.

Henry N. Berry, III, County Atty., Peter G. Ballou, Asst. Atty. Gen., Portland, for plaintiff.

Lowry & Platt by Donald Grey Lowry, Robert D. Platt, Portland, for defendant.

Before DUFRESNE, C. J., and WEATHERBEE, WERNICK, ARCHIBALD and DELAHANTY, JJ.

WERNICK, Justice.

Maine jurisprudence has long adhered to the principle that if a motion for judgment of acquittal filed at the conclusion of the State's case in chief has been overruled and defendant proceeds to present evidence in his own behalf, defendant "waives" the issue of the sufficiency of the State's prima facie case; thereafter, the adequacy of the evidence to justify conviction is open to challenge only as tested by the *totality* of the evidence adduced. State v. Rand, 156 Me. 81, 161 A. 2d 852 (1960); State v. Rainey, 149 Me. 92, 99 A.2d 78 (1953); State v. Johnson, 145 Me. 30, 71 A.2d 316 (1950); State v. Shortwell, 126 Me. 484, 139 A. 677 (1928). The "waiver" principle is preserved under Rule 29 M.R.Crim.P. State v. Sawyer, Me., 314 A.2d 830 (1974); State v. Cedre, Me., 314 A.2d 790 (1974); State v. Tomer, Me., 304 A.2d 80 (1973); State v. Morton, Me., 290 A.2d 371 (1972); State v. Lizotte, Me., 256 A.2d 439 (1969).

In his instant appeal from a Superior Court (Cumberland County) judgment entered upon a jury verdict adjudicating defendant guilty of the crime of "receiving stolen goods" (in violation of 17 M.R.S.A. § 3551) defendant asks that we overrule our prior decisions affirming the "waiver" doctrine.

We reject the request. We discern no current policy reason sufficiently cogent to

require that we depart from our long and firmly established practice.[1]

Defendant goes beyond policy, however, and maintains that the decision of the Supreme Court of the United States in In Re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) embodies a federal constitutional mandate that the "waiver" rule be discarded.

We disagree.

In United States v. Calderon, 348 U.S. 160, 75 S.Ct. 186, 99 L.Ed. 202 (1954) the Supreme Court of the United States, without intimation of any doubt of constitutionality, mentioned and applied as established federal practice the principle that by introducing evidence in his own behalf after a motion for acquittal filed at the end of the State's case in chief has been overruled, defendant

" . . . waives his objections to the denial of his motion to acquit." (text of n. 1 at p. 164 of 348 U.S., at p. 188, of 75 S.Ct.)

The "waiver" doctrine acknowledged in *Calderon,* supra, continues as the prevailing federal practice under federal criminal Rule 29 (of which Rule 29 M.R.Crim.P. is a language counterpart).

Neither in terms nor by suggestion does *Winship* indicate doubts of the constitutionality of the "waiver" principle to which *Calderon,* supra, had adverted. Rather, *Winship* makes amply clear that its constitutional stricture concerns only the *totality* of the evidence.

The New York statute directly at issue in *Winship* provided that

"[a]ny determination *at the conclusion* of [an adjudicatory] hearing that a [juvenile] did an act or acts must be based on a preponderance of the evidence." (emphasis supplied) (as cited in the *Winship* opinion at p. 360 of 397 U.S. at p. 1070 of 90 S.Ct.)

The *Winship* holding invalidating *this statute* is stated expressly as:

" . . . the Due Process Clause protects the accused against *conviction* except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." (emphasis supplied) (p. 364 of 397 U.S., p. 1073 of 90 S.Ct.)

Throughout the *Winship* opinion the Court treats the historical foundations and the general policy considerations supporting its decision by focusing upon the *conviction* of the defendant as the end-product of the entirety of the criminal prosecution. Amplifying a primary policy reason for its view, the Court quotes from Speiser v. Randall, 357 U.S. 513, 525–526, 78 S.Ct. 1332, 1342, 2 L.Ed.2d 1460 (1958) that:

" ' . . . Where one party has at stake an interest of transcending value —as a criminal defendant his liberty— . . . margin of error is reduced as to him by the process of placing on the other party the burden of . . . persuading the factfinder *at the conclusion of the trial* of his guilt beyond a reasonable doubt. . . . .' " (emphasis supplied) (p. 364 of 397 U.S., p. 1072 of 90 S.Ct.)

■ While, admittedly, under the "waiver" doctrine a defendant who has intro-

---

1. In reaching this conclusion, we have not overlooked the criticisms of the "waiver" doctrine indicated in Cephus v. United States, 117 U.S.App.D.C. 15, 324 F.2d 893 (1963) and strongly asserted in (Phillips) Comment, The Motion for Acquittal: A Neglected Safeguard (1961) 70 Yale L.J. 1151, 1160–1163.

But see: 8 Moore's Federal Practice (2nd ed. Cipes) at pp. 29–18 and 29–19:

"As long as there is no effective appellate review of motions for acquittal [testing the State's prima facie case], the inevitable cautionary tendency of trial judges will result in continued denial of relief at this stage of the trial and render the motion meaningless. It is doubtful . . . any measure short of outright abolition of the waiver doctrine will permit effective review and will reverse this tendency. *But whether permitting the guilty to escape . . . is worth the gain in this particular situation is questionable.*" (emphasis supplied)

duced evidence in his own behalf is deprived of the right, at the conclusion of all the evidence, to test the sufficiency of the evidence in its posture at the close of the State's case in chief, the doctrine leaves unimpaired defendant's right to achieve a judgment of acquittal on the ground that the *totality* of the evidence adduced fails to establish beyond a reasonable doubt defendant's guilt. The "waiver" rule thus remains consistent with the constitutional mandate of *Winship*.

Here, although he had moved (without resting) for a judgment of acquittal at the close of the State's evidence, defendant omitted at the conclusion of all the evidence as well as after jury verdict to file a motion for judgment of acquittal under Rule 29 M.R.Crim.P., or a motion for a new trial under Rule 33 M.R.Crim.P.,

"deemed [by Rule 29] to include a motion for judgment of acquittal as an alternative."

Defendant, therefore, now urges us to overrule our recent holding in State v. Gamage, Me., 301 A.2d 347 (1973)

" . . . that, except in exceptional circumstances and to prevent manifest injustice, we will decline to treat the issue [of the sufficiency of all the evidence to sustain a verdict of defendant's guilt] as raised unless the 'foundation' has been properly laid at trial level." (p. 348)

The *Gamage* decision was reached with this Court

"[m]indful of the uncertainty suggested in State v. Morton (1972-Me.) 290 A.2d 371, 373 (Footnote 2) . . . " (p. 348),

and after this Court had

" . . . carefully reviewed the policy considerations underlying the review requirements imposed . . . ." (p. 348)

In asking us to overrule *Gamage,* defendant now asserts the same arguments previously considered by us when we decided *Gamage.* Further evaluation of the arguments fails to convince us that we should abandon *Gamage.*

We stress that, in practical terms, the *Gamage* principle does not preclude appellate scrutiny of a defendant's claim that the totality of the evidence is insufficient to justify conviction since, as acknowledged in United States v. McIntyre, 467 F.2d 274 (8th Cir. 1972), cert. den., 410 U.S. 911, 93 S.Ct. 972, 35 L.Ed.2d 274 (1973),

"the plain error doctrine, . . . would undoubtedly apply in any case where evidence is lacking to support a conviction . . . circumstances . . . clearly affect[ing] the substantial rights of [a defendant]." (p. 276, n. 1)

Hence, without in the ultimo depriving defendant of appellate review of his challenge to the sufficiency of the entire evidence, *Gamage* aims to induce trial attorneys scrupulously to observe the practice of bringing to the attention of the trial Court all claims of errors occurring at trial, the objective being to enhance opportunity for trial errors to be corrected at the trial level and thereby diminish need for resort to the appellate tribunal. Since in this respect the *Gamage* principle is conducive to a sounder appellate practice, we reaffirm it.

We turn, then, within a "manifest error-serious injustice" posture, to evaluate defendant's contention that the totality of the evidence is inadequate to support a jury conclusion beyond a reasonable doubt that defendant is guilty of the crime charged against him.

Defendant asserts insufficiency of proof as to one essential element of the crime of "receiving stolen goods":—that defendant "believed" the chattel he purchased was stolen.

Defendant argues that even though he had purchased a truck, sight unseen, from

a stranger at an "after-hours drinking place"—the truck having been in fact recently stolen in Massachusetts,—the justifiable suspicion with which such a transaction would ordinarily be viewed should not here attach because defendant's next-door neighbor had been an intermediary between defendant and the stranger.

Whatever the merits, if any, of this contention in itself, it fails to overcome the effect of several other facts disclosed by the evidence, that: (1) defendant was not readily able to pay but was obliged to borrow the $2,500.00 purchase price of the truck; (2) after the agreement of purchase had been made, the truck was delivered by being left during the night in defendant's yard while defendant was absent —the bill of sale being placed on the front seat; (3) the serial number specified in the bill of sale reversed the last two digits of the serial number of the truck; (4) a camper which came with the truck to constitute a truck-camper unit, notwithstanding that defendant had disavowed purchasing the camper, was delivered with the truck to defendant's yard and defendant transported the camper to other premises owned by his mother-in-law—the jury being entitled to disbelieve defendant's explanation that defendant had arranged with the stranger to leave the camper in the control of defendant for an indefinite time to allow defendant, for a price of $100.00, to clean its interior; (5) defendant had not yet paid for the truck when it was delivered to his house but thereafter borrowed the money to pay for it even though defendant had become aware that the vent window on the driver's side of the truck was missing and the bill of sale contained no owner's signature but, in print, stated ownership in "David Austin, G & S Auto Sales"—this ownership status being different from that represented to defendant when the original purchase agreement was reached insofar as the stranger had been identified to defendant as an "Elliott something" and claimed to be selling his truck because he was "getting a divorce and he wanted to get rid of it before his wife got to it"; (6) defendant arranged for the check given in payment to be payable in manner such that "G & S Auto Sales" would receive the money; and (7) when delivered to defendant's yard, the truck was white in color, with pin stripes, having been recently so painted, and within less than a week after he had received it, and notwithstanding that he had become aware of the recent painting of the truck, defendant had it repainted in a white color and obliterated the pin stripes (it being the jury's prerogative to discredit defendant's explanation that he repainted it because he thought the other paint job "poor" and he wanted to cover some rust underneath the rear fenders).

The foregoing facts, cumulatively with the circumstances that defendant had bought the truck, sight unseen, from a total stranger whom he met at an "after-hours drinking place", plainly warranted a jury conclusion beyond a reasonable doubt that if defendant was not "sure" that the truck he was buying was stolen, nevertheless, within the doctrine of State v. Beale, Me., 299 A.2d 921 (1973) and State v. Melanson, Me., 325 A.2d 14 (1974), defendant entertained actual subjective "belief" that it was stolen.

The entry is:

Appeal denied.

POMEROY, J., did not sit.

All Justices concur.